First case, it's number 2010-14-47, Respironics against Invicare Corporation, Mr. McGough. Is that the correct pronunciation? It's McGough, but I respond to it any which way you want, thank you. May it please the court, counsel. I'm Tom McGough, representing Respironics, which appeals from a summary judgment of non-infringement entered in the court below. At issue in our appeal is the construction of the term predetermined pressure profile, which this court actually did construe in Respironics 1, a decision by a prior panel of this court, and on remand, the district court, we believe, misinterpreted this court's opinion to say that predetermined pressure profile had to be reconstrued yet again. But we didn't address the word predetermined. No, this court did not. As a matter of fact, it didn't really deal with this facet of the phrase predetermined pressure profile at all. It, for purposes of consistency, reached out and tweaked the construction of predetermined pressure profile in a way to make it consistent with the rest of the opinion, but didn't talk about what needed to be predetermined, and didn't construe specifically the term predetermined. So why wasn't it then open to the district court to address that? We don't believe it was. So, but the question is why not? Why not? Why, since you yourself say we didn't address the meaning of the term predetermined, why couldn't the district court then do that? Because under the law of the case, Your Honor, that is, it hadn't been an issue. The, this particular construction of predetermined hadn't been an issue in the district court prior to the judgment from which the appeal was taken, nor was it an issue in the appeal. That would seem to prove that it wasn't the law of the case then. Your Honor, only if one, only if one doesn't believe that there is a time in the case for claim constructions and Markman hearings and claims to be advanced, and that if that passes without an argument being made that predetermined needs to be construed and means this, then final judgment is entered, a jury trial is concluded on one piece of the case. It goes up on appeal and in not, at no point in that case, up to that point is this, did the parties even request a construction of predetermined that the district court did on remand. Now, the district court appeared to believe that this court somehow opened the door for this new interpretation of predetermined in its opinion in Respironics 1. We don't believe it did. There's nothing in this court's opinion that suggests that predetermined or predetermined pressure profile needs to be construed any further at all, let alone to come up with a new interpretation or construction of predetermined. In any event, just as a matter of judicial economy, we don't believe that that's an appropriate way. Whether it's law of the case formally or just a matter of judicial economy, it seems rather late in the day to insert into the case a new interpretation of a term that the parties didn't ask for back at the beginning. Okay. Well, suppose we decide that it was okay for the district court to address the meaning of that term. Why was the district court wrong in construing it the way it did? The, the, probably the clearest reason, Your Honor, is claim differentiation. If, if the term predetermined pressure profile means that shape, magnitude, and duration all have to be determined prior to the operation of the machine, which is what the district court determined, then you render several subsequent pieces of claim, of the independent claim irrelevant, and you also render the dependent claims irrelevant. What do you do? You take out, if, if shape, duration, and magnitude are all determined prior to the machine operating, in other words, prior to the patient breathing at all, then the clause that says where in shape is set independent of monitored respiratory characteristics becomes completely irrelevant. Of course it is. There are no monitored characteristics before operation. The shape is set, the same with the magnitude, the same with the duration. It's all set at the, at the initiation of the operation of the machine. So you've taken that where in clause in the independent claim 21 and 43, and you've essentially eliminated that. You've also eliminated the... You do have in the specification a statement that this is set in advance by the respiratory therapist, right? Typically set in advance by the respiratory therapist, not... Well, typically could refer to the parameters that are described in that sentence rather than typically set in advance. The language in the specification says that the pressure profile is typically set in advance. Yeah, but that's not a complete quote of the sentence. You're right, Your Honor. We can go to the complete quote, which is probably what we want to do. Are you looking at column 20, line 45? Correct, that's exactly right. The predetermined pressure profile, which is used to reduce CPAP pressure, has a magnitude M, which is typically selected by a respiratory therapist in a range zero to four. Yes, and it typically could refer to the range there rather than typically selected. Correct, and Your Honor, it's important to understand what this predetermined pressure profile specification, what this embodiment was intended to do. And to understand that, you have to go to the proportional machine. What the proportional machine does is it monitors an expiratory breath, the bottom part of the pressure curve, on a millisecond to millisecond basis. It monitors what the patient is doing and it matches that magnitude and matches that duration so that it applies a therapy in precise and instantaneous response to that breath. And what the embodiment says is, you may not need to do that. You may not need to monitor that every single instance. And therefore, you can make a less expensive machine, which isn't as sensitive, by using a predetermined pressure profile. And what is a predetermined pressure profile according to Claim 21 and Claim 43? It is a pressure profile wherein the shape is set independent of the respiratory function. So you don't, in order to get the shape, in order to track that thing perfectly, you don't have to monitor it moment to moment. 21 and 43 don't say anything about how the magnitude or the duration are set. And there are lots of different ways that that could be set that would distinguish it from this proportional machine where it's being monitored instantaneously. The specification mentions in one place, setting the duration based on sort of a running average of breath durations. Another possibility is that the magnitude could be set based on the magnitude of the prior breath, for example. But in any of those, other than the instantaneous mirroring of, monitoring of the shape, would be a predetermined pressure profile. Could I move you to the invalidity issues? Sure. I'm unclear as to what particular elements of these claims are missing from UNIS. Could you tell me which ones the district court found that none of them was omitted from UNIS? But you say that eight of them were. I've been over it. It seems to me that of the eight, they either weren't a requirement of the claims or alternatively that there was undisputed testimony that they were present in UNIS. So why am I wrong about that? Well, could I give you just one example, Your Honor? And that would be predetermined pressure profile. This court, in its prior opinion, at page 15, we already talked about this, construed the term predetermined pressure profile means that something that reduces the constant pressure of CPAP or the reduced EPAP pressure of bi-level therapy once the device detects the expiratory breathing phase. That's this court's interpretation of predetermined pressure profile. There is nothing in the UNIS article that reflects that. Nothing whatsoever. But, and then rather than each of... But the expert, that's your argument, but UNIS himself said, and the respironics expert said that this was present in UNIS. Well, what respironics expert? UNIS doesn't say anything about EPAP pressure or bi-level therapy. What expert said that this wasn't present in UNIS? No expert said that, because it was never evaluated against this. Well, that's the problem. I mean, it's just lawyer argument. You can't create a genuine issue of material fact in something like this without having expert testimony. There's no expert testimony that contradicts the expert testimony that says it is present in UNIS. Well, first of all, Your Honor, we're dealing with anticipation here, all right? In anticipation, it has to be, the elements not only have to be present in the article, but they have to be arranged in a way. In other words, the article has to explain how you do it. I understand. You don't need an expert. UNIS did say that there's some difference in the arrangement. I don't understand what that means. He's describing a piece of equipment. It's obvious that things have to be done in a particular order, and it's not as though we're dealing with a situation in which things could be done in some different order. What's missing about the arrangement? What's missing about the arrangement is any indication of how you would wire or hook up this machine, which can generate any kind of pressure profiles you want. What's missing in this, under the Theracense case, is any indication of how you would arrange it in order to obtain a predetermined pressure profile wherein the shape of the profile is determined independent of any monitored respiratory characteristic. That's what's missing from the UNIS article. That's what the district court found. That's what the patent office, the PTO, we don't know what it found, but it had the UNIS article before it. The district court has found this, and you can read the UNIS article, and there is nothing in there that tells you how you do that. All the UNIS article does is says, I've got a machine, and it can vary the patterns any way you want. That's essentially what the UNIS article says. Remember, we're dealing here with an article that was before the patent office, where the burden of proof on the plaintiff is to prove, or the proponent of the defense, is to prove by clear and convincing evidence that the UNIS article anticipated it. And by the way, you asked what expert said it wasn't there? Mr. UNIS said it wasn't there. I've read that. He said it's not there. I wrote it, and it's not there. Yeah, but I'm not understanding what he's saying when I read that testimony. I don't understand what arrangement is different. He describes a machine. Apparently, at least according to your opponent, and the district court includes all of these elements. I mean, I don't understand why this is a situation in which the order of arrangement isn't perfectly clear to someone skilled in the art from the reference itself. Well, Your Honor, and that's where the Therosense case becomes so important, and the argument that the plaintiffs, I'm sorry, the proponents of this defense made below, and that it is not enough for an expert to say, I can read this article, and knowing what I know, I could have arranged this machine to generate this waveform. Under Therosense, that's not enough. Yeah, but it is enough if you know how to do it. Well, that's what an expert skilled in the art, and I think Therosense said exactly the opposite. It's not, and that's the argument they made to the district court. Mr. Orth came forward and said, I'm an expert, I read his article,  in a way that's not disclosed in the article. It's not disclosed in the article. It is based on what I know, and putting two together, and as Mr. Yunus pointed out, if you know the waveform that you're trying to get, you can back-engineer this thing to make anything. You can make it blow bubbles if you want, but you gotta know, once you know the waveform that you want, then you can back-engineer it, but that's not anticipated in the article itself, and that's the Therosense distinction. That's critical, and it's not an obviousness argument. They don't have an obviousness argument. They didn't make an obviousness argument. Instead, they've got anticipation, which is narrower, a very high burden, with the PTO on top of it, and by summary judgment is what they're seeking. Well, they're seeking, but you got a summary judgment the other way, so I'm not sure you want to push very hard on the problem of summary judgment. I'll step one level back. I think you need to step two levels back, because not only do you step back from their getting summary judgment, you have to step back and show us why you're entitled to summary judgment, right? Right, and that is, if you read the UNIS article and hold it up to the Therosense standard, can you find, you don't need Mr. Orth to do this, can someone skilled in the art find within that essentially a disclosure of what you'd have to do within the article? But they had an expert witness who said you could. Well, but he doesn't point to where it is. He doesn't show where in the article it is. All he does is say, you take, and you know, there's a Chinese menu approach to their argument here. When one looks at the argument that they make in support of their invalidity claim, but Mr. Orth and in their brief, they say, all right, here's this element and you can find it if you look at this piece What choice would you have to make to put it together? He's describing an apparatus in there. But he's grabbing from different pieces of the article and saying, if you use one from column A, one from column 16. Tell me what picking and choosing is involved here. Give me an example of something where there's picking and choosing involved. He describes an apparatus, it's very simple. I'm over my time, but I will give it to you if you will provide me with just one moment. For example, if you go to page 4 of their gray brief, this is what I call their Chinese menu argument. At the bottom of page 4, and I'll just read it to you, it says, to provide proportional exhalation and unloading. The flow signal is multiplied by a gain and used as a second input into the offset multiplier. What do they cite for that? A558, column 2, paragraph 2. A561, column 1, paragraph 4. And column 2, paragraph 2. The offset amplifier combines the voltage source's continuous positive pressure signal with the predetermined proportional input signal to provide a command signal to the linear actuator and a pressure generator. Page 561, column 2. Page 561, column 2, paragraph 4. Page 559. This is the picking and choosing. This is exactly what he's doing. And that's right from their reply brief. What are the alternative choices that are being made here that relate to a claim limitation? Is there some choice that wouldn't bring it within the claims that you could make to create this apparatus that's described there as opposed to a choice that you would make that would bring it within the claims? It is a matter of arrangement. Now, is arrangement a matter of choice? Yes, it is. But you're not answering my question. My question is, what choice are you given between something that would bring the apparatus within the claims as opposed to a choice that would leave it outside the claims? Everything else in the... As I said, this is a machine that can blow all kinds of waveforms. But there's no particular waveform. Is there in the claim here? What are you contending? Well, the claim form, yes. It is a predetermined pressure profile but not a particular waveform. In which the shape is set independently. Yeah, but the shape is not a particular shape. No. It is a particular... It's a way of determining a shape. My time's up, Your Honor. We'll give you a couple of minutes. I appreciate that, Your Honor. Very well. Let's see. We have Mr. Lyon. I'm Chuck Lyon, Your Honor. Counselor, may it please the court. I'd like to address the mandate issue directly. First, in the Respondent 1 appeal the court was faced with the district court's definition of shape being magnitude and duration. And in that definition it modified that finding in two ways. It modified... He pretty much agreed that it wasn't specifically addressed in the prior decision. Yeah. But when that definition of pressure profile was found by the court in Respondent 1 that brought into play the term predefined. It made it an issue. It wasn't an issue before that pressure profile definition was given as meaning, shape, magnitude and duration. You have a concession that it wasn't addressed in the earlier decision. Why are you fighting that? Yeah. We believe that it's appropriate to hear Mr. McGuff argue that there is a law of the case relevant to predetermined pressure profile. That was, as he said, limited only to magnitude for the specific purpose of consistency. The definition of pressure profile, on the other hand, is not limited to just magnitude. It's also shape and duration. Therefore it's appropriate for the district court to look at it. It was critical to the reversal and predetermined was not addressed. Therefore, it's free to do it on remand. He also talked about the alleged claim differentiation being the issue here. There's no claim differentiation problem. Why not? Why isn't it the case that claim 43 and 44 as well as claim 21 and 22 create at least the setting for a claim differentiation argument? Specifically, claim 44 just to take that as the beginning example refers to adding the step of setting at least one of a magnitude and duration of said pressure profile, which suggests that claim 43 does not contain the element of setting a duration or a magnitude. Why doesn't that speak at least go a long way towards speaking to the question of whether those features are predetermined in the sense that you're using the term? Number one, there are two different words. Set and predetermined. Secondly... I want to come back to that. The predetermined relates to when before operation the definition of where in the shape is independent of monitored patient characteristics speaks to the how. Well, but I'm not sure maybe you're what you said in response to my question, but if it does, tell me. My problem with the claim differentiation issue is does something that is predetermined mean that it's set in advance? Well, first answer that if you would. Yes. Let me answer that by saying the this court in Respironics I determined what shape meant and they defined shape as a contour and then a pressure profile dropping down to the minimum value and then coming back up independent of exact values of the So based upon that definition of shape you know that it's predetermined that it's going to drop down the pressure profile to quote the minimum pressure but that minimum pressure is not defined because it's the definition of shape I'm not sure you're responding to my question. Are you getting around to an answer? I am. Try to get there. It says number one that drop is independent of monitor patient characteristics and it's independent of any exact values so from a standpoint of predetermined pressure profile of claim 43 it's predetermined in that it's going to drop to the minimum pressure but there's no exact values given under the definition of shape and then claim 44 says wherein you set those values so there's direct correspondence it's limiting that which was not specifically defined in claim 43 which was independent of exact values, claim 44 sets the exact values. If I set a value let's say for magnitude or duration then it's predetermined right? If you set an exact value it's predetermined. The question is so we know that something that is said is predetermined and the question then is is something that is predetermined as that term is used in these two claims, is that also set in advance? What's defined as predetermined is set in advance. In this case it's a drop to the minimum pressure independent of exact values and then in the dependent claim it's set according to those exact values so there's further limitation of... So you're really saying that set does mean something different from predetermined. Set means fixing exact values predetermined in the context of the decision of this court on shape means it's predetermined and then it drops independent of monitor patient characteristics to the minimum value without the exact quantity. Okay. Go ahead. Respironics also raises an argument about what they call indirectly determined predetermined pressure profile or directly determined predetermined pressure profile. There's no support anywhere in the specification for those terms. There's no algorithms, anything else that would support those terms. They look to figure 11 and to a quote from the specification on column 20. First with respect to figure 11 the predetermined pressure profile is being talked about in this case is stored in memory. It's there before operation begins. And in this case there are multiple predetermined pressure profiles stored in memory before operation begins. Those predetermined pressure profiles can then be selected according to this from memory to roughly correspond to the patient's PPAP therapy. In other words, magnitude, duration, they've all been set. It's fixed. And you then select from memory those that would roughly correspond to the pressure profile. In operation those predetermined pressure profiles, which are independent of monitored patient characteristics, are not going to be impacted in any way by the pressure profile. They're fixed. They're set. They're in memory. It doesn't support this indirectly determined, predetermined pressure profile. They then also quote from a sentence that reads basically the predetermined pressure profile includes a magnitude and it also includes a duration. And the duration is defined as follows. Unlike the pressure curve in figure 7b, is not directly determined based on the patient's instantaneous flow rate. So they're comparing it to the proportional embodiment of figure 7b. In the proportional embodiment, the duration is directly determined based on the patient's instantaneous flow rate. And all this is saying is the duration is not that. The word directly relates to the proportional embodiment, not to the predetermined embodiment. Therefore, there's no basis for that argument. Could you address, I don't know if you're about to wrap up your discussion of the claim construction and infringement, but I want you to save time if you would for validity. Are you about done with infringement? Yeah, I'm about done. I would certainly say that there is clear support in the specification for the judge's finding in terms of intrinsic evidence. I would also say that in the appeal there's clear support for it. There's two different arguments made in the appeal. Now, I'm sorry, the judge's finding, now, as to which issue are you? On the predetermined. Okay. And there's two different arguments made in the appeal. One was with the detection of exhalation at pressure profile as provided wherein the flow or pressure of the gas is provided without regard to the actual patient flow. So we're talking pressure profile and it's independent of monitor patient characteristics. And then the second argument is that the expiratory waveform profile is predetermined, i.e. not based on monitor patient characteristics. So twice, that's something about pressure profile, not shape, and twice they say that the pressure profile is independent of patient characteristics. Turning to the validity issue. The court erred in at least four ways. Well, rather than making a broad sweeping argument about invalidity, why don't you address the specific points that Mr. McGough raised. Mr. McGough raised a couple of points. One is the argument that none of these parts were put together for the reader in the article, and the second was that predetermined pressure profile was the missing element. Could you address those two? Sure. In the first instance, you've got to look at what is the law and how you address it, and I know you know that law, but... Let's get right to the facts, because we're really running low on time. I want to get to the essence of where you think the record either is undisputed with respect to the presence in the article of all the limitations or where you think at least there's a factual dispute. You heard Mr. McGough's presentation on those two issues, so what's your specific response? The specific response is the Eunice article discloses the specific connections and discloses them in a way that is arranged to meet the claims. There's no doubt about that. When one of ordinary skill in the art looks at it with the knowledge that exhalation unloading is desired, every piece is disclosed to assembled, and if you looked at figures three and five in the red brief, it shows exactly how it's assembled. Dr. Eunice himself admits and I'm now reading from 1161 question at the output of the summing amplifier in figure three is shown as a constant continuous positive airway pressure and inhalation in the bottom half of the sine wave decreasing the pressure in exhalation. That could have been done according to what was actually described and illustrated in the Eunice article exhibit B correct. Answer the apparatus was designed that it could provide this pattern if one wanted to do it. And then there's another quote that says the author of the article himself, this is all directed to one device and all of the disclosure is directed to that device. This is a directly related article and it follows that one ordinary skill in the art knows how to put those together based upon his knowledge of exhalation unloading. And the presence of the predetermined pressure profile notation? Yes. The article to which we would find the presence of the predetermined pressure profile is shown in the article by the provision of an external function generator which can generate a sine wave. You capture the bottom half of the sine wave and it's going to be exhalation unloading. It's going to drop down from the pressure and therefore it's going to be below the CPAP level. So it's there's figures disclosing that. Figures 3 and 5 show the specific waveform dropping below. Very well. Thank you Mr. Lyons. Mr. McGough. Thank you. I believe I have two minutes. Two minutes, two points. Number one, figure 11. Neither the district court and this is on the predetermined pressure profile, neither the district court nor Mr. Lyons has an answer to figure 11b. Bob, the trouble I have with figure 11 is I don't know what it means. Was there some expert who looked at that and said well this is inconsistent with the district court view that predetermined means selected in advance? Well, short answer to your question, no. As far as I know, none of the, no one, no expert testified to that. As far as what it means your honor, it is, if you read the descriptions of the figures, figure 11 is described as being like all the prior flow and pressure diagrams. It's pressure against time. And what figure 11b shows that is so destructive. It could be for different patients though. Why is it necessarily the same patient? Well, because time is, time runs horizontal your honor. The spec doesn't say it's the same patient does it? Well, no your honor, although I think it would be a great leap to take figure 11b in the context of all the other figures that are there and say that this is three separate breaths or three different patients when what it has on the horizontal axis is time and a continuous line going through. And the problem they have is that if predetermined pressure profile means shape, duration and magnitude are all predetermined then why in figure 11b does duration change in response to the flow in figure 11a and why does magnitude change at all? That can't be under the district court's interpretation of predetermined pressure profile. I said I'd hit one other point and it goes to validity and it's this Mr. Lyons stood up here as Mr. Orth did and as the questions posed to Mr. Eunice did and kept using the word could, could, could, could. Someone skilled in the art could look at this article and could figure out how to generate that. Could as a shorthand for enabled. Well, except the problem is that's exactly the instruction, the jury instruction that this court rejected in Theracense. The jury instruction that was held not to be sufficient read would the prior art have informed those skilled in the art that those elements could have been arranged as in the claimed invention then that would be anticipation. And that's specifically what the court said in Theracense. That is not the test. The test is whether I thought the expert testimony here was that somebody would have known how to do it, not that somebody could have. Here I think we're sort of getting existential your honor. The difference between could and would, would a person who is skilled in the art, what's the difference between a person who is skilled in the art would they know something or could they know something? If it tells them what they need to know then they could build it. I thought that was the context in which or they would know. They either could know or would know but the key is that they could build the machine if they so chose. If that's what the evidence shows then I would assume that that would mean that they were enabled to build the machine even though they weren't compelled to build it. Except for Theracense your honor. What Theracense says is for purposes of anticipation a prior art disclosure of individual claim elements that could have been arranged in a way that is not itself described or depicted in the anticipatory reference. So you have to go back and you have to look, remember this is anticipation, this is the PTO officer looking at this article and trying to decide is it anticipated and the question is, is it described or arranged in the article in the same way as in the claims? Very well, we have your argument. We've given a little extra time to Mr. McGough. So Mr. Lyons, why don't you take one minute. You've run through all your time but I'll give you one minute for sir rebuttal on the validity. He raised two points basically that the duration does not change in figure 11B. That's because there are three predetermined pressure profiles having set durations that are That doesn't sound like invalidity. I'm talking about Oh, I'm sorry. No, you can't address that. I'm sorry. Relative to the Theracense jury instruction, the problem with the Theracense jury instruction was it didn't say not directly related in the prior art. And in this case, it's clearly related in the prior art. You've got one device and the entire description is about that device. So Theracense doesn't apply. It's distinguishable from this case because it is directly related and directly disclosed in the article. Very well. Thank you Mr. Lyons and we thank both counsel. The case is submitted.